UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

ROBERT THOMAS HARRISON,            )
(Social Security No. XXX-XX-4416)  )
                                   )
                    Plaintiff,     )
                                   )    3:12-cv-87-RLY-WGH
           vs.                     )
                                   )
CAROLYN W. COLVIN, Acting          )
Commissioner of Social Security,   )
                                   )
                    Defendant.     )

## REPORT AND RECOMMENDATION ON
## JUDICIAL REVIEW OF DENIAL OF BENEFITS

This matter is before the Honorable William G. Hussmann, Jr., United States Magistrate Judge, pursuant to an Entry Referring Matter to Magistrate Judge, to conduct and issue a report and recommendation regarding the appropriate disposition of this matter. (Docket No. 18). Plaintiff, Robert Thomas Harrison, seeks judicial review of the final decision of the Commissioner of Social Security, which found him not disabled and therefore not entitled to disability insurance benefits under the Social Security Act ("the Act"), 42 U.S.C. § 301 *et seq.*

For the reasons stated below, the Magistrate Judge recommends that the Commissioner's decision be affirmed.

## I. Background

### A. Procedural History

Harrison applied for disability benefits on January 5, 2009, alleging he became disabled on March 25, 2008. His application was denied initially and upon reconsideration. (R. at 19, 60-68, 71-77). On January 25, 2011, an Administrative Law Judge held a hearing, during which Harrison and a vocational expert testified. On March 25, 2011, the ALJ issued his opinion finding Harrison not disabled. (R. at 30). The Appeals Council denied Harrison's request for review on March 20, 2012, making the ALJ's decision the final decision of the Commissioner. 20 C.F.R. §§ 404.955(a), 404.981. Jurisdiction is proper pursuant to 42 U.S.C. § 405(g), which provides that:

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision . . . in [a] district court of the United States.

### B. ALJ Findings

The ALJ's decision included the following findings: (1) Harrison met the Act's insured status requirement through December 31, 2013; (2) he had not engaged in substantial gainful activity since the alleged disability onset date; (3) Harrison had the following severe impairments: osteoarthritis in both knees, history of acute gastrointestinal bleed, history of diverticulitis, post-traumatic stress disorder ("PTSD"), and depressive disorder; (4) none of these impairments met or equaled the listed impairments in 20 C.F.R. Part 404, Subpart P,

Appendix 1 (R. at 21-23); (5) Harrison had a residual functional capacity ("RFC") to do medium work with the following limitations: he could lift 50 pounds occasionally and 25 pounds frequently; he could stand and/or walk for six hours in an eight-hour workday and could also sit for six hours; he was limited to simple tasks in an environment that was not fast-paced or quota driven; and he was precluded from working around the general public (R. at 23-28); (6) Harrison was unable to perform any past relevant work as defined by 20 C.F.R. §§ 404.1565, 416.965; (7) Harrison was 52 years old on the alleged onset date, has at least a high school education, and could communicate in English; and (8) considering Harrison's age, education, work experience, and RFC, there existed significant jobs in the national economy he could perform. (R. at 28-29). Based on these factual findings, the ALJ concluded Harrison was not disabled.

## II.     Legal Standards

In order to qualify for disability benefits, Harrison must establish that he suffered from a "disability" as defined by the Act. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To establish disability, the claimant must present medical evidence of an impairment resulting "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence

consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms."  20 C.F.R. §§ 416.908; 404.1508.

The Social Security regulations outline a five-step inquiry the ALJ is to perform in order to determine whether a claimant is disabled.  The ALJ must consider whether the claimant:  (1) is presently employed in substantial gainful activity; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals an impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) is unable to perform his past relevant work; and (5) is unable to perform any other work existing in significant numbers in the national economy.  20 C.F.R. § 404.1520(a)(4).  The burden of proof is on Harrison for steps one through four; only after Harrison has met his evidentiary burden does the burden shift to the Commissioner at step five.  *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

An ALJ's findings are conclusive if they are supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (internal quotation omitted); *see also Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997).  This standard of review recognizes that it is the Commissioner's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide questions of credibility.  *Perales*, 402 U.S. at 399-400.  Accordingly, this court may not re-evaluate the facts, weigh the evidence anew, or substitute its judgment for that of the Commissioner.

*See Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, even if reasonable minds could disagree about whether or not an individual is "disabled," the court must uphold the ALJ decision. *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000).

## III. Discussion

Harrison makes the following claims on appeal: (1) the ALJ failed to properly weigh the evidence; and (2) the ALJ failed to properly assess Harrison's credibility.

### A. Failure to Properly Weigh the Evidence

#### 1. Opinion of Rebecca Alexander

Harrison first argues that the ALJ erred in assigning little weight to the opinion of Rebecca Alexander ("Alexander"), a licensed social worker and Harrison's psychotherapist. (R. at 28, 295-97). In January 2009, Alexander diagnosed Harrison with PTSD, which had resulted from a March 2008 incident of massive gastrointestinal bleeding and aggravated by inappropriate prescribing of medication. (R. at 225, 241, 244, 296). She assessed a Global Assessment of Functioning ("GAF") score of 50. (R. at 296).[1] She opined that Harrison was a reasonable man whose mental health had improved and could tolerate low-level work stress, but he could not return to construction work due to his irrational fears and poor judgment. (R. at 317-18).

---

[1] A GAF score of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS ("DSM-IV") 32.

The ALJ noted that Alexander's findings were inconsistent with the rest of Harrison's treatment records at Centerstone Mental Health Center (R. at 28), where he was a patient between September 2008 and June 2009. (R. at 295-345). The ALJ concluded that Alexander had too severely limited Harrison's work abilities. (R. at 28).

Harrison argues the ALJ erred because he failed to specify which findings were inconsistent with Alexander's opinions, and this failure frustrates meaningful judicial review. *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000). He further claims, even though Alexander is a non-medical source, that pursuant to SSR 06-03p, 2006 WL 2329939, at *1 (Aug. 9, 2006) (allowing for opinions from non-medical sources to be used to show the severity of impairments), her opinion should have been evaluated and the factors of the treating physician rule applied to that evidence. 20 C.F.R. § 404.1527(d).[2]

The treating physician rule is a two-step process that an ALJ must undertake in assessing a claimant's RFC if a treating physician's opinion is in the record. First, the ALJ must determine if the physician's findings are supported by the medical findings and consistent with other substantial evidence in the record. If so, the opinion is to be given controlling weight. *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007) (internal quotation omitted). If not, the ALJ must consider several factors in deciding how much weight to give the opinion, including:

---

[2] At the time the ALJ issued his decision, the treating physician rule was codified at 20 C.F.R. § 404.1527(d). Subsequently, the regulation was modified, and the rule was re-codified unchanged at 20 C.F.R. § 404.1527(c).

6

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security administration's attention that tend to support or contradict the opinion.

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. § 404.1527(d).

Harrison's argument is unavailing, even analyzing Ms. Alexander's opinion under the treating physician rule. Even though the ALJ did not discuss explicitly the above-listed factors in weighing Alexander's opinion, Agency regulations do not mandate that he do so. 20 C.F.R. § 404.1527(d). Rather, the ALJ must merely provide enough specificity to make clear to the reviewing court what weight was given to the opinion and why. SSR 96-2p, 1996 WL 374188, at *5 (Jul. 2 1996). The ALJ has done so. The ALJ discussed the inconsistency between Alexander's opinion of marked limitations with the facts that Harrison was never prescribed any anti-anxiety medications, was not prescribed an antidepressant until one month after the PTSD diagnosis, and his therapy sessions focused on "family conflict, financial stressors, and managing feelings more effectively." (R. at 25). This inconsistency is a valid reason for giving Alexander's opinion little weight. 20 C.F.R. § 404.1527(d)(4). The Magistrate Judge recommends that the court not disturb the ALJ's finding. *See Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000).

### 2. Opinions of Drs. Kenneth Neville, J. Gange, and Jessica Huett

Harrison also argues that the ALJ committed several errors in the weight he assigned certain additional opinions and that, as a result, there was not substantial evidence to support the ALJ's RFC determination. First, he claims that the ALJ erred by relying principally on opinions from Drs. Kenneth Neville and J. Gange. According to Harrison, since Drs. Neville and Gange were Disability Determination Bureau ("DDB") reviewing psychologists, their opinions alone cannot constitute substantial evidence to reject Ms. Alexander's opinion or for the mental RFC determination. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Second, he argues that the ALJ erred in giving great weight to a GAF score of 51[3] given by Dr. Jessica Huett, DDB examining psychologist. (R. at 271). Harrison claims this violates SSA regulations, which caution against relying on GAF scores to indicate severity of particular symptoms. *See* 65 Fed. Reg. 50746, 50764-5 (Aug. 21, 2000). Finally, he opines that because Dr. Huett's mental status notes (R. at 270-71) were consistent with Alexander's findings, the ALJ cannot give Huett's opinion greater weight than Alexander's, since treating sources are generally accorded greater weight than an examining source. 20 C.F.R. § 404.1527(d)(2).

Harrison's contentions are not entirely supported by the record. Dr. Neville, a reviewing psychologist, concluded that while Harrison suffered from

---

[3] A GAF score of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) *or* moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."

8

depression and PTSD, he was only mildly restricted in his daily living activities and maintaining social functioning. Dr. Neville further concluded Harrison had only moderate difficulties in maintaining concentration, persistence, and pace. (R. at 283, 285 290). Dr. Gange reviewed the record evidence and affirmed Dr. Neville's assessment. (R. at 355). The ALJ incorporated these findings into his limitations that Harrison could not be in a fast-paced or quota-driven environment. (R. at 23). Contrary to Alexander's assertion, when the non-treating medical or psychological consultants make a reasonable reading of the objective medical evidence, this can constitute substantial evidence. *Rice v. Barnhart*, 384 F.3d 363, 370-71 (7th Cir. 2004). Moreover, the fact that Drs. Neville and Gange are acceptable medical sources is a proper reason for giving their opinions more weight than Alexander's opinion. *See, e.g.*, SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). Their findings were substantial evidence upon which the ALJ could base his decision. If there was any error in giving great weight to Dr. Huett's GAF score, or in giving greater weight to the opinion of Dr. Huett than Alexander's opinion, such error is harmless.[4]

### B. Failure to Properly Assess Harrison's Credibility

Assessing a claimant's credibility for determining the weight of a claimant's testimony in the ALJ's RFC assessment is a two-step process. First, the ALJ must determine whether the impairments found at step two could reasonably be expected to cause claimant's symptoms. Second, the ALJ must

---

[4] The Magistrate Judge's review of Dr. Huett's examination leads him to conclude that Dr. Huett conducted an appropriate examination. Her conclusion that Harrison still suffered from depression and PTSD, although the latter may be improving (R. at 271), is consistent with the opinions of Drs. Neville and Gange.

9

determine whether the claimant's statements about the intensity and persistence of symptoms are consistent with other evidence. 20 C.F.R. § 404.1529(a-c). The ALJ found that Harrison's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, his statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. at 27). The ALJ considered the following evidence: Harrison never complained of psychological or psychiatric difficulties to his primary care physician; his treatment for mental health issues largely consisted of counseling; he was never hospitalized or placed on anti-anxiety medication; he performed a wide variety of daily activities; and he related well without any emotional distress at the hearing. (R. at 25, 27-28).

Harrison claims that the ALJ's explanation of his credibility determination was legally erroneous, noting that this boilerplate language was specifically criticized by the Seventh Circuit in *Bjornson v. Astrue*. 671 F.3d 640 (7th Cir. 2012). The *Bjornson* Court noted that the ALJ should assess a claimant's credibility before determining whether the claimant is capable of working, and the boilerplate language "gets things backwards." *Id*. at 645-46. By using such language, Harrison claims the ALJ evaluated his statements against a predetermined RFC rather than the record evidence.

Moreover, to the extent the ALJ considered the evidence, Harrison claims his findings are unsupported and patently wrong. He argues that: (1) because

10

he was seeing a mental health specialist, the fact that he did not complain to his primary care doctor is meaningless; (2) not being hospitalized was not itself evidence his condition was not severe; (3) he was taking Paxil for depression, anxiety, and PTSD; and (4) the ALJ failed to show how his daily activities equated with being able to work full-time. Finally, he claimed that the ALJ violated the Seventh Circuit's warning to ALJs not to "place much weight in their lay observations of the claimant" (Plaintiff's Brief at 17 (citing *Powers*, 207 F.3d at 436)) by relying too heavily on his observations of Harrison during the hearing. This is particularly true in a case like Harrison's, where the claimant's condition varies greatly from day to day. (*Id.* (citing *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008))). Taken together, Harrison opines, the ALJ's credibility assessment constituted reversible error.

The ALJ is in a unique position to assess the claimant's veracity and forthrightness, and their credibility findings about claimants are entitled to special deference. *Nelson v. Apfel*, 131 F.3d 1228, 1237 (7th Cir. 1997). As long as the ALJ builds a logical bridge between the evidence and his conclusion, *id.* at 1237-38, and the finding is not "patently wrong," *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir.1994), a reviewing court should not disturb this finding. Use of boilerplate language is not by itself sufficient to require remand. *Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012). This court's review turns instead on whether the ALJ adequately considered the record evidence and provided a sufficient basis in making his credibility finding. *See Richison v. Astrue*, 462 Fed. App'x 622, 625-26.

The Magistrate Judge concludes that the ALJ did so. The ALJ evaluated Harrison's testimony against the objective record evidence, along with his descriptions of daily activities and the frequency and intensity of pain. (R. at 27-28). In doing so, the ALJ analyzed all the required factors. 20 C.F.R. § 404.1529(a); SSR 96-7p, 1996 WL 374186, at *3 (Jul. 2, 1996). The ALJ concluded that, in light of the available evidence, Harrison tended to maximize his symptoms and minimize his abilities, a conclusion supported by the opinions of Drs. Neville and Robert Bond.[5] (R. at 27, 278, 294). The Seventh Circuit has recognized this as a valid reason for disbelieving some of a claimant's statements. *Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010). The ALJ's detailed description as to why he did not find Harrison fully credible demonstrates a thorough evaluation of Harrison's statements against the record before coming to his credibility conclusion. *See Filus v. Astrue*, 694 F.3d 863, 868-69 (7th Cir. 2012). Therefore, the ALJ built a logical bridge between the evidence and his conclusion.

In the absence of such legal error, Harrison must prove that the ALJ's assessment was "patently wrong." *Herron*, 19 F.3d at 335. The ALJ's alleged errors do not meet this standard. The ALJ is required to consider to what extent a claimant had received treatment outside of taking medication. 20

---

[5] The Magistrate Judge notes that the Seventh Circuit has sharply criticized ALJs equating daily activities with an ability to perform full-time work. *Hughes v. Astrue*, 705 F.3d 276, 278 (7th Cir. 2013). While the ALJ in this case did extensively discuss Harrison's daily activities, he also relied on the inconsistencies between Harrison's testimony and treatment history, and his conclusion that Harrison exaggerates his symptoms was supported by substantial medical evidence. The Magistrate Judge therefore finds the ALJ did not violate the *Hughes* Court's admonition.

12

C.F.R. § 404.1529(c)(3)(v). Therefore, it was proper for the ALJ to consider that he had never spoken with his primary care physician about psychiatric issues or received inpatient treatment or crisis intervention for any psychiatric issues. (R. at 27). While the record reflected Harrison used Paxil for his depression or PTSD (R. at 328, 330), Harrison produced no evidence that he took Paxil for anxiety. The Magistrate Judge cannot conclude the ALJ erred by not going outside the record to consider Harrison using Paxil to treat anxiety.

      Harrison further states that the ALJ erred in failing to mention that the renovation work he was doing at his house was going poorly. Harrison claims this makes the ALJ's evaluation of Harrison's non-work activities in the context of his credibility unreliable. Harrison's reasoning is unpersuasive. Pointing out omissions does not mean the opinion was unsupported by substantial evidence. *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003). In this case, the ALJ conducted a thorough evaluation of Harrison's descriptions of daily activities, and his conclusion was supported by substantial evidence. Accounting for Harrison's testimony that the renovation work was going poorly would not undermine the evidentiary foundation. Harrison's final argument that the ALJ relied too much on his observation of the claimant at the hearing in determining Harrison's credibility is similarly flawed. Even assuming *arguendo* that this was error, it does not undermine the other substantial evidence the ALJ relied upon (R. at 27-28), and the ALJ's credibility determination must be upheld.

## IV. Conclusion

For the foregoing reasons, the Magistrate Judge **RECOMMENDS** the ALJ's decision that Harrison is not disabled be affirmed.

You are hereby notified that the District Judge may reconsider any pretrial matter assigned to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B). Any party shall have fourteen (14) days from the date of service to file written objections to this Report and Recommendation.

**SO RECOMMENDED** this 5th day of September, 2013.

_____
William G. Hussmann, Jr.
United States Magistrate Judge
Southern District of Indiana

**Distributed to all ECF-registered counsel of record via email.**